IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GERALD S. LEESEBERG, individually )
and on behalf of all others )
similarly situated, )
)
        Plaintiff, )
)
v. )     C.A. No. 08-926-GMS
)
CONVERTED ORGANICS INC., )
)
        Defendant. )
_____ )

## MEMORANDUM

## I.  INTRODUCTION

On December 9, 2008, the plaintiff, Gerald S. Leeseberg ("Leeseberg"), filed this lawsuit against Converted Organics, Inc. ("Converted"). In his complaint, Leeseberg seeks actual damages and liquidated damages for an alleged breach of contract, conversion, unjust enrichment and breach of the implied covenant of good faith against Converted. Presently before the court is Converted's partial motion to dismiss the Leeseberg's claims for actual damages, conversion, unjust enrichment and breach of implied covenant of good faith. For the reasons that follow, the court will deny the motion with respect to the plaintiff's actual damages claim for breach of contract and grant the motion with respect to the his claims of conversion, unjust enrichment and breach of implied covenant of good faith.

## II.    FACTUAL BACKGROUND

### A.    The Financing Terms Agreement

On April 11, 2006, Leeseberg entered into an agreement to purchase 101 Units of Converted, a developing company, for $1.515 million.  (D.I. 1 ¶ 1.)  Both parties signed and agreed to the terms of the deal in a document titled the Financing Terms Agreement for the Sale of Bridge Notes and Shares (the "FTA").  (Id.)  Pursuant to the FTA, Leeseberg received 101 Units of Converted, consisting of an 8% Bridge note and Bridge Equity Unit[1] for the issuance of securities identical in form to the securities to be offered for sale in Converted's initial public offering ("IPO").  (Id.)

The Bridge Equity Units the plaintiff acquired were restricted securities.  Leeseberg entered the contract with the understanding that he was not permitted to resell the securities without registration under the Securities Act.  (Id. ¶ 3.)  The FTA specifically set forth the plaintiff's rights under the contract:

> **Restricted Securities** . . . The ***purchaser*** also understands that the ***Bridge Equity Units*** and, with certain limited exceptions, any securities issuable on exercise or conversion thereof may not be resold by the ***Purchaser*** without registration under the Securities Act or an exemption therefrom, and that in the absence of an effective registration statement covering the ***Bridge Equity Units*** or an available exemption from registration under the Securities Act, the ***Bridge Equity Units*** may be restricted from resale in a transaction to which United States securities laws apply for an indefinite period of time.

(D.I. 6, Ex. 1D at 12) (emphasis in original.)

Under the FTA, Converted was obligated to file a resale registration statement with the Securities and Exchange Commission (the "SEC") covering the securities issued to the plaintiff no later than August 15, 2007, or 180 days after its IPO.  Without an effective registration, Leeseberg

---

[1] Because they are not relevant to the outcome of Converted's motion, the court will not discuss the technical meanings and functions of the Bridge Equity Notes and Units.

would not be able to resell his securities.  (D.I. 1 ¶ 3.)  Both parties agreed to the following

registration deadlines:

> [Converted] will (1) file a resale registration statement within 180 days of the *Public Offering* closing; (2) cause it to be effective within 240 days of the *Public Offering* closing if the registration statement is not reviewed by the Securities and Exchange Commission *("SEC")* and 270 days of the *Public Offering* closing if the registration statement is reviewed by the *SEC* covering the resale of the *Bridge Equity Units* and the *Document Preparation Securities* (including the resale of any shares of common stock issuable upon the exercise or conversion of any *Bridge Equity Units*); and (3) cause it to remain effective with a current prospectus available for a period of the longer of two years, or until the expiration or exercise in full of any warrants contained in the *Bridge Equity Units*.

(D.I. 6, Ex. 1 at 4.) (emphasis in original).  In the event that Converted failed to timely register, both

parties agreed to a Late Fee that it would pay the plaintiff.  Under the FTA:

> If [Converted] fails to satisfy requirements (1) or (2) above it will be subject to a 2% cash late registration fee (i.e. 2% of the outstanding *Bridge Note(s)* principal) per month or part thereof that such failure continues ("*Late Fee*"); provided such *Late Fee* shall not be accrued for any month after one year from the *First Closing* that [Converted] is current in its reporting obligations under the Exchange Act and has been subject to such reporting requirements for at least 90 days, unless any Holder is the beneficial owner of more than 1% of *Converted Organic's* issued and outstanding common stock, in which case the *Late Fee* shall continue to accrue for no more than two years from the *First Closing*.

> If [*Converted*] fails to satisfy requirement (3) above, the *Late Fee* shall continue until the longer of the period set forth in the preceding paragraph, or the expiration or exercise in full of any warrants included in the *Bridge Equity Units*.

(Id. at 4-5.) (emphasis in original).  Put a bit more simply, Converted was obligated to pay a 2% cash

late fee to Leeseberg for each month or part thereof past the deadline to timely register.

## B. Leeseberg's Breach of Contract Claim

Leeseberg claims that Converted failed to meet the registration deadlines specified in the FTA. (D.I. 1 ¶ 27.) Specifically, he alleges that Converted filed for registration on April 3, 2008, and, thus, failed to meet the deadline by 232 days. (Id.) Additionally, the plaintiff alleges that the registration statement was declared effective on June 16, 2008, or 245 days after the deadline. (Id. ¶ 29.) He also alleges that Converted failed to register the common stock issued under the FTA. (Id. ¶ 27.)

Leeseberg claims that, on September 16, 2008, three months after registering his warrants, Converted announced that it was going to redeem its outstanding warrants for $0.25 per warrant on October 17, 2008. (Id. ¶ 33.) Over the following two days after the announcement, the price of the Class A warrants declined from $2.20 to $0.71. (Id.)

Leeseberg alleges that Converted breached the FTA by failing to timely register the securities issued and that he is due $330,000 under the Late Fee. (Id. ¶ 31.) Leeseberg also alleges that he is entitled to damages of $8.95 and $7.78 per Class A warrant and Class B warrant, respectively, as a result of Converted's failure to register the securities within the time required under the FTA. (Id. ¶ 5.) Leeseberg's claim for actual damages, which he calculated by taking the difference between the closing price for his warrants on March 6, 2008 (the date the warrants were valued at its highest) and the closing price on June 16, 2008 (the date registration became effective), totals almost $5 million. (Id. ¶ 5.) Leeseberg avers that the Late Fee is not a liquidated damages clause and, thus, he is entitled to actual damages in addition to the Late Fee damages agreed upon under the FTA. (Id. ¶ 31.) He also avers that Converted's failure to register the securities issued under the FTA deadlines amounted to a conversion (id. ¶ 48), unjust enrichment (id. ¶ 51), and that Converted's act of

4

redeeming its warrants three months following registration constituted a breach of its implied duty of good faith (id. ¶ 55).

## III.    STANDARD OF REVIEW

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the court looks at the facts most favorable to the non-moving party. *See, e.g. Calloway v. Green Tree Servicing, LLC*, 607 F. Supp. 2d 669, 673 (D. Del. 2009). A complaint does not need detailed factual allegations, however, "a plaintiff's obligations to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citations omitted). In other words, the plaintiff is required  to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009). If they do not, the court should dismiss the complaint. *See id.*

## IV.    DISCUSSION

Converted moves to dismiss Leeseberg's claims for actual damages, breach of implied duty of good faith and fair dealing, unjust enrichment, and conversion. The court will discuss each of Converted's grounds in turn.

5

## A. The Late Fee

Converted argues that the Late Fee is a liquidated damage clause and, therefore, Leeseberg is barred from recovering actual damages. Conversely, Leeseberg argues that the Late Fee is not a liquidated damages clause, and that he is entitled to actual damages in addition to the Late Fee provided in the FTA.[2] In Delaware, interpretation of contract language is a question of law. *BCG, Inc. v. GLeS, Inc.*, No. 07-207 GMS, 2008 WL 2856708 at *2 (D. Del. July 23, 2008). The language of the contract is the only evidence the court will use to interpret a contract or clause of a contract when that language is unambiguous.[3] *Id.* Therefore, "[c]ontract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1128, 1232 (Del. 1997).

Parties to a contract may agree to a fixed amount of damages as the exclusive remedy for the non-breaching party in the event of a breach. *W & G Seaford Assocs., L.P. v. Eastern Shore Mkts., Inc.*, 714 F. Supp. 1336, 1347 (D. Del. 1989). Actual damages cannot be recovered when liquidated damages are agreed upon. *See Stone, Sand, & Gravel Co. v. United States*, 234 U.S. 270 (1913) (noting that since claimant agreed to liquidated damages he is not entitled to actual damages incurred

---

[2] Generally, on a motion to dismiss pursuant to Rule 12(b)(6), a court may not consider material outside of the pleadings. The court makes an exception, however, when a document becomes "integral to or explicitly relied upon in the complaint." *In re Burlington Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (superseded by statute on other grounds)). Here, the court finds that Leeseberg has made the Late Fee and the FTA "integral" parts of his complaint. Thus, it considers them for the purpose of deciding the Converted's motion to dismiss.

[3] Although the parties disagree as to the meaning of the Late Fee, neither contends that it is ambiguous.

as a result of the breach). Under Delaware law, courts must analyze the validity of the liquidated damage clause by asking (1) whether, at the time of contracting, damages from a breach are uncertain and (2) whether the stipulated amount is a reasonable forecast of those damages. *W & G Seafood Assocs.*, 714 F. Supp. at 1347.

Before the court can determine whether the Late Fee is the sole remedy, however, it must first determine whether the language at issue is indeed a liquidated damages clause. Although the clause in question need not be labeled "Liquidated Damages," the party seeking to have it enforced as such must demonstrate that it was the "unambiguous intention of the contracting parties." *Ballenger v. Applied Digital Solutions, Inc.*, No. Civ.A. 19399, 2002 WL 749162 at *12 (Del. Ch. April 24, 2002).

In the present case, the Late Fee does not bear the label "Liquidated Damages." As such, there must be some explicit evidence in the contract indicating that the clause provides Leeseberg's sole damages in the event of a breach. *Polish Am. Mach. Corp. v. K. & D. Corp.*, 760 F.2d 507, 512 (3d Cir. 1985). For example, in *Polish American Machine Corp.*, the Third Circuit Court of Appeals found that the parties settlement agreement did not provide for liquidated damages. *Id.* at 512. The court's holding was premised on the fact that "[t]he agreement neither mentions the word 'liquidated damages,' nor contains any provision relating to remedies in case of breach." *Id.* Likewise, in *Applied Digital Solutions*, a case similar to the present case, the defendant alleged that a price protection clause for a delay in the registration statement that did not contain the phrase "liquidated damages" was, in fact, a liquidated damages clause. *Id.* The Delaware Chancery Court disagreed and held that the clause was used to protect the investors in the event the registration statement was

7

delayed, not as the sole remedy for any injury resulting from Applied Digital Solutions' breach. *Id.*
at 13.

Here, Converted points to nothing in the FTA which would indicate to the court that the Late
Fee was to be the sole remedy for breach of contract. In the absence of any explicit language within
the contract, the court concludes that the Late Fee is analogous to the protection provided to
investors with the price protection clause in *Applied Digital Solutions* and, therefore, not the sole
remedy for breach.[4] Thus, the Late Fee is not a liquidated damages clause, and the court will deny
Converted's motion to dismiss the actual damages claim.

## B. Leeseberg's Claims for Conversion, Unjust Enrichment, and Breach of Implied Covenant of Good Faith

Converted also moves to dismiss Leeseberg's claims for Conversion, Unjust Enrichment, and
Breach of the Implied Covenant of Good Faith. Leeseberg's claim for conversion rests on his
argument that Converted's failure to timely register with the SEC prevented him from using his
property. Under Delaware law, where there is a valid contract between the parties and the plaintiff
has asserted a breach of contract claim, the court should dismiss a conversion claim based on the
same assertions, because such arguments are "adequately addressed by [the plaintiff]'s breach of
contract claim." *In re Crown-Simplimatic Inc.*, 299 B.R. 319, 326-27 (Bankr. D. Del. 2003). Here,
Leeseberg's conversion claim relies on the same assertion as his breach of contract claim – that is
– Converted failed to timely register the warrants. Because both claims are based on the same

---

[4] Moreover, the court notes that interpreting the Late Fee as the sole remedy for breach in
essence would have provided Converted with the ability to disregard the terms of the FTA with
almost no consequences, as long as it was willing to pay a late fee that was less than five times
Leeseberg's alleged actual damages.

assertion, the court agrees with Converted that relief is more appropriately found in a breach of contract cause of action. Accordingly, the court will dismiss the plaintiff's conversion claim.

Leeseberg next argues that Converted has been unjustly enriched as a result of its failure to timely register the warrants with the SEC. Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of equity and good conscience." *Tolliver v. Christina Sch. Dist.*, 564 F. Supp. 2d 312, 315 (D. Del. 2008) (citations omitted). As Leeseberg correctly points out in his brief, this court has established clear guidelines for unjust enrichment claims: "Delaware law permits a claim for unjust enrichment where an express contract exists that does not govern exclusively the obligations or rights of the parties at issue." *Id*. at 315-16. This court also has recognized that an unjust enrichment claim may survive a motion to dismiss "when the validity of the contract is in doubt or uncertain." *Id*. at 315. Here, an express contract exists, which governs the obligations and rights of the parties, specifically, the obligation of Converted to timely register the saleable warrants with the SEC. Additionally, the validity of the contract is not in doubt or uncertain. In fact, Leeseberg seeks to enforce the contract and all of its provisions. Because a valid contract exists that governs the precise issue before the court, the plaintiff is precluded from bringing an unjust enrichment claim. As such, the court will grant Converted's motion to dismiss this claim.

Finally, Leeseberg argues that Converted breached its implied duty of good faith by exercising its express rights under the contract. Specifically, Leeseberg theorizes that although Converted "had the technical right to redeem the warrants," Converted's act of redeeming those

9

warrants constituted a breach of its implied duty of good faith.[5] Considering first that Delaware law instructs that "[i]mposing an obligation on a contracting party through the covenant of good faith and fair dealing is a cautious enterprise," it is clear that courts rarely should apply the doctrine of implied good faith. *Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, C. A. No. 1668-N, 2006 WL 2521426, at *6 (Del. Ch. Aug. 25, 2006) ("The covenant of good faith and fair dealing, implied in every Delaware contract, arises from fundamental notions of fairness. It is a judicial convention designed to protect the spirit of an agreement when, *without violating an express term of the agreement,* one side uses oppressive or underhanded tactics to deny the other side the fruits of the parties' bargain."). Leeseberg admits there is express contractual language governing the matter at hand, and he has asserted his rights pursuant to that language. By implication then, Leeseberg has acknowledged that which is patent; he cannot successfully maintain his action for breach of the so-called implied covenant of good faith. The court will dismiss this claim.

## V.     CONCLUSION

For the aforementioned reasons, the court concludes that Leeseberg has properly stated a claim for actual damages resulting from the Converted's alleged breach of contract. The court further concludes that Leeseberg has failed to state claims for conversion, unjust enrichment and breach of implied covenant of good faith. Therefore, the court will grant in part and deny in part Converted's motion to dismiss.

Dated: October 7, 2009

CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Leeseberg's brief cites only one case explaining the general contours of the doctrine of implied good faith in support of his position.

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GERALD S. LEESEBERG, individually        )
and on behalf of all others              )
similarly situated,                      )
                                         )
             Plaintiff,                  )
                                         )
      v.                                 )        C.A. No. 08-926-GMS
                                         )
CONVERTED ORGANICS INC.,                 )
                                         )
             Defendant.                  )
_____ )

## **ORDER**

      For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

      1.    Converted's Partial Motion to Dismiss (D.I. 5) is GRANTED in part and DENIED

in part. The motion is GRANTED with respect to Leeseberg's claims for conversion, unjust

enrichment, and breach of implied covenant of good faith. The motion is DENIED with respect to

Leeseberg's actual damages claim.

Dated: October 7, 2009

CHIEF, UNITED STATES DISTRICT JUDGE