## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GERALD S. LEESEBERG, individually and on )
behalf of all others similarly situated, )
                                   )
             Plaintiff, )  C.A. No. 08-926-GMS
                                     )
                                     )
           v. )
                                     )
CONVERTED ORGANICS INC., )
                                     )
             Defendant. )

## PLAINTIFF'S BRIEF IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

Rabin & Peckel LLP
I. Stephen Rabin (*pro hac vice*)
Joseph V. McBride (*pro hac vice*)
275 Madison Avenue
Suite 420
New York, NY 10016
(212) 880-3722

Rosenthal, Monhait & Goddess, P.A.
Joseph A. Rosenthal (No. 234)
Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
919 Market Street, Suite 1401
Wilmington, DE 19899
(302) 656-4433

*Attorneys for Plaintiff and the Class*

Dated: June 22, 2010

# TABLE OF CONTENTS

**PAGE**:

NATURE AND STAGE OF THE PROCEEDINGS .................................... 1

SUMMARY OF ARGUMENT ..................................................... 2

STATEMENT OF FACTS ....................................................... 2

    The Financing Terms Agreement ............................................. 3

    The Failure to Register The Securities ........................................ 4

    The Late Fee ............................................................. 5

ARGUMENT ................................................................. 6

    A.  APPLICABLE LEGAL STANDARDS ............................................ 6

    B.  THE PREREQUISITES OF RULE 23(a) ARE SATISFIED ........................... 9

        1.  Numerosity ...................................................... 9

        2.  Commonality .................................................... 9

        3.  Typicality ...................................................... 10

        4.  Adequacy ...................................................... 11

    C.  THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED ........................ 12

        1.  Predominance ................................................... 12

        2.  Superiority ..................................................... 13

            a.  The Class Members' Interest in Individually Controlling
               The Prosecution of Separate Actions ............................. 14

           b.  The Extent and Nature of Any Litigation Concerning the Controversy
               Already Begun by Class Members ............................... 14

**PAGE**:

|   | c. | The Desirability or Undesirability of Concentrating the Litigation of The Claims in the Particular Forum .................................. 14 |

|   | d. | The Likely Difficulties in Managing a Class Action ..................... 14 |

D. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ................. 15

CONCLUSION ............................................................. 15

# TABLE OF CITATIONS

**CASES:**                                                                                        **PAGE:**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chiang v. Veneman*,
  385 F.3d 256 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Duncan v. TheraTx, Inc.*,
  775 A.2d 1019 (Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hubbard v. Danberg*,
  2010 WL 883776 (D. Del. Mar. 10, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iii

**CASES:** **PAGE:**

*Klay v. Humana*,
382 F.3d 1241 (11th Cir. 2004) .................................................. 7

*Klingensmith v. BP Prods. N. Am., Inc.*,
2008 WL 4360965 (W.D. Pa. Sept. 24, 2008) ..................................... 13

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ................................................ 9-11

*Steinberg v. Nationwide Mutual Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) ................................................ 7

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ................................................ 9, 10

## STATUTES AND RULES:

Fed. R. Civ. P. 23(a) ..................................................... 7-10

Fed. R. Civ. P. 23(b) ................................................. 7, 8, 11, 13

Fed. R. Civ. P. 23(g) ....................................................... 14

## OTHER AUTHORITIES:

7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
FEDERAL PRACTICE AND PROCEDURE § 1778 at 528 (2d ed. 1986) ................... 12

Class Action Fairness Act of 2005,
109 P.L. 2 § 2(a)(1) (2005) .................................................... 6

Plaintiff and proposed class representative Gerald S. Leeseberg respectfully submits this brief in support of his motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order that this case be maintained as a class action, on behalf of all those who purchased Units of Converted Organics Inc. pursuant to a Financing Terms Agreement for Sale of Bridge Notes and Shares, dated April 11, 2006 (the "FTA").

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff together with other investors (the "class") collectively invested $1.515 million in defendant Converted Organics Inc. ("Converted Organics" or the "Company"). In exchange for their investment, they were issued notes and later were issued securities: common stock and two classes of warrants. The Company was required to file a registration statement covering the securities and have it declared effective within a specified time frame. However, these registration obligations were not performed within the times specified, causing plaintiff and the class to suffer damages.

On December 9, 2008, Plaintiff filed his class action Complaint in this matter asserting four claims: (1) breach of contract; (2) conversion; (3) unjust enrichment; and (4) breach of the implied covenants of good faith and fair dealing.[1]

On February 6, 2009, Defendant moved for partial dismissal of the complaint as to all claims except for the breach of contract claim on which it sought to preclude recovery of actual damages in addition to the late fee.

---

[1] A copy of the Complaint is annexed to the Declaration of P. Bradford deLeeuw, executed on June 22, 2010 (the "deLeeuw Dec."), as Exhibit 1.

1

The Court, by MEMORANDUM and ORDER, dated October 7, 2009, denied Defendant's motion with respect to Plaintiff's claim for actual damages but granted it with respect to the claims for conversion, unjust enrichment, and breach of implied covenant of good faith.

In accordance with Rule 26(a), the parties have made their respective initial disclosures. In connection therewith, Plaintiff has produced, among other things, his Converted Organics Subscription Agreements, Converted Organics Promissory Notes, Converted Organics stock and warrants certificates, checks (for his investments), the FTA, records of Converted Organics securities historical prices and volume, and Converted Organics SEC filings.

The parties are currently engaged in discovery.

## SUMMARY OF ARGUMENT

This case is the quintessential class action. It involves (1) whether the defendant breached its contract with 59 investors by failing to timely register securities it sold to them and (2) what damages were caused by defendant's breach. As demonstrated below, the same written contract is applicable to all of the investors, all of the investors were harmed in the same way by Defendant's breach, and the same factual and legal issues are involved with respect to all investors. Indeed, Plaintiff submits that there are *no* individual issues present here, and therefore the class certification motion should be granted.

## STATEMENT OF FACTS[2]

Converted Organics is a Delaware corporation maintaining its principal executive offices in Massachusetts. (deLeeuw Dec., Ex. 3(Answer, ¶ 11);(D.I. 18).)

---

[2] This Court succinctly summarized the relevant facts in its MEMORANDUM on defendant's motion for partial dismissal. (deLeeuw Dec., Ex. 2 (MEMORANDUM, at 2-4);(D.I. 15).) We incorporate by reference that summary but, for the sake of completeness, we set forth below in greater detail the facts upon which that summary is based.

2

THE FINANCING TERMS AGREEMENT

During the period between March and June 2006, Plaintiff Gerald Leeseberg and the class

collectively purchased 101 Units of Converted Organics for $1.515 million pursuant to the FTA.[3]

Each Unit consisted of an 8% Bridge Note and a Bridge Equity Unit for the issuance of *restricted*

securities identical in form to the securities to be offered for sale in Converted Organics' initial

public offering.[4]

On February 16, 2007, Converted Organics completed its initial public offering of 1.8

million units (the "IPO"). (deLeeuw Dec., Ex. 3(Answer, ¶¶ 2, 19);(D.I. 18).) Each unit in the

IPO consisted of one share of common stock, one redeemable Class A warrant, and one

non-redeemable Class B warrant. *Id.*

---

[3] (deLeeuw Dec., Ex. 1 (Complaint ¶¶ 1, 17); (D.I. 1).) Defendant attached a true and correct copy of the FTA to the Declaration of John M. Seaman in Support of Defendant's Motion for Partial Dismissal of Complaint (D.I. 6), as Exhibit 1. (deLeeuw Dec., Ex. 4 (FTA); (D.I. 6-2, Ex. 1).) Plaintiff and each class member by signing a Subscription Agreement agreed:

> that by signing this subscription agreement, I am agreeing to be bound by all of the terms and conditions of the Financing Terms Agreement For Sale of Bridge Notes And Shares, dated April 11, 2006 (the "Financing Terms Agreement"), including the Security Agreement and Escrow Agreement attached to the Financing Terms Agreement as Exhibits B and C, respectively, which are included in the Memorandum, and my signature on this agreement is deemed to be a signature on the Financing Terms Agreement, Security Agreement, and Escrow Agreement.

(deLeeuw Dec., Exs. 5-6 (Subscription Agreements, at 1); (D.I. 6, Exs. 2-3).)

[4] "Upon the closing of the **Public Offering**, the **Company** shall deliver to each **Purchaser**, **Bridge Equity Units** consisting of securities identical in form to the securities offered for sale in the **Public Offering** . . . except that the certificates . . . may bear restrictive legends." (deLeeuw Dec., Ex. 4 (FTA, at 2 (Bridge Securities) (emphasis in original)); (D.I. 6-2, Ex. 1).)

3

Plaintiff and the class were collectively issued 293,629 *restricted* shares of common stock, and the same number of Class A warrants and Class B warrants. (deLeeuw Dec., Ex. 3(Answer, ¶¶ 2, 20);(D.I. 18).)

THE FAILURE TO REGISTER THE SECURITIES

Converted Organics was required to register the securities issued pursuant to the FTA:

The Company will (1) file a resale registration statement within 180 days of the ***Public Offering*** closing: (2) cause it to be effective within 240 days of the ***Public Offering*** closing if the registration statement is not reviewed by the Securities and Exchange Commission ("*SEC*") and 270 days of the ***Public Offering*** closing if the registration statement is reviewed by the *SEC* covering the of the ***Bridge Equity Units*** and the ***Document Preparation Securities***, (including the resale of any shares of common stock issuable upon the exercise or conversion of any ***Bridge Equity Units***); and (3) cause it to remain effective with a current prospectus available for a period of the longer of two years, or until the expiration or exercise in full of any warrants contained in the ***Bridge Equity Units***.

(deLeeuw Dec., Ex. 4 (FTA, at 4 (Registration Rights) (emphasis in original)); (D.I. 6-2, Ex. 1).)

Converted Organics was obligated pursuant to the FTA to file a registration statement covering the securities issued plaintiff and the class *no* later than 180 days after the IPO closing, i.e. August 15, 2007. Converted Organics was obligated pursuant to the FTA to have that registration statement declared effective *no* later than 240 days after the IPO closing,[5] i.e. October 14, 2007. The registration statement was *neither* filed *nor* declared effective by those deadlines.

Plaintiff and the class were unable to exercise or sell their warrants as a result of the Company's failure to register the securities as required.[6]

---

[5] In the event the registration statement was reviewed by the SEC, the registration statement was to be declared effective *no* later than 270 days after the IPO closing, i.e. November 13, 2007.

[6] The FTA expressly provides:

**Restricted Securities** . . . The ***Purchaser*** also understands that the ***Bridge Equity Units*** and, with certain limited exceptions, any securities issuable on exercise or

4

On April 3, 2008, Converted Organics filed a registration statement covering the 293,629

redeemable Class A warrants and non-redeemable Class B warrants (and 587,258 shares of

common stock underlying those warrants).[7] (deLeeuw Dec., Ex. 3(Answer, ¶ 27);(D.I. 18).)

On June 16, 2008, the registration statement was declared effective by the SEC,

(deLeeuw Dec., Ex. 3(Answer, ¶ 29);(D.I. 18)), after the market close.

Plaintiff and the class have suffered damages as a result of Converted Organics' failure to

timely register the warrants as required. On March 6, 2008, when their warrants should have

been registered, Class A warrants closed for $12.35 per warrant and Class B warrants for $11.63

per warrant. (deLeeuw Dec., Ex. 3(Answer, ¶ 26);(D.I. 18)); (deLeeuw Dec., Ex. 7.) On June

17, 2008, the first trading day after registration, Class A warrants closed at $2.99 per warrant and

Class B warrants closed at $3.98 per warrant. (deLeeuw Dec., Ex. 7.)

## THE LATE FEE

The FTA also provided for payment of a Late Fee in the event that the Company failed to

satisfy its registration requirements:

> If the Company fails to satisfy requirements (1) or (2) above it will be subject to a
> 2% cash late registration fee (i.e. 2% of the outstanding *Bridge Note(s)* principal)
> per month or part thereof that such failure continues ("*Late Fee*"); provided such

---

> conversion thereof may not be resold by the *Purchaser* without registration under the
> Securities Act or an exemption therefrom, and that in the absence of an effective
> registration statement covering the *Bridge Equity Units* or an available exemption
> from registration under the Securities Act, the Bridge Equity Units may be restricted
> from resale in a transaction to which United States securities laws apply for an
> indefinite period of time.

(deLeeuw Dec., Ex. 4 (FTA, Ex. 1D at 12 (emphasis in original)); (D.I. 6-2, Ex. 1).)

[7] No registration statement covering the common stock issued was ever filed, but the
common stock became saleable under the provisions of SEC Rule 144. (deLeeuw Dec., Ex. 1
(Complaint ¶ 27); (D.I. 1).)

> **Late Fee** shall not be accrued for any month after one year from the **First Closing** that the Company is current in its reporting obligations under the Exchange Act and has been subject to such reporting requirements for at least 90 days, unless any Holder is the beneficial owner of more than 1% of **Converted Organics's** issued and outstanding common stock, in which case the **Late Fee** shall continue to accrue for no more than two years from the **First Closing**.
>
> If the Company fails to satisfy requirement (3) above, the **Late Fee** shall continue until the longer of the period set forth in the preceding paragraph, or expiration or exercise in full of any warrants included in the **Bridge Equity Units**.

(deLeeuw Dec., Ex. 4 (FTA, at 4-5 (Registration Rights) (emphasis in original)); (D.I. 6-2, Ex. 1).)

Converted Organics, as detailed above, failed to satisfy its registration requirements from August 15, 2007 until June 16, 2008, a period of 11 months or parts thereof.

Plaintiff and the class are collectively entitled to payment of a cash Late Fee of $333,300.[8]  To date, Converted Organics has *not* paid the cash Late Fee.

## ARGUMENT

### A.   APPLICABLE LEGAL STANDARDS

"[C]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).  Both Congress and the courts have repeatedly recognized that "[c]lass action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm." Class Action Fairness Act of 2005, 109 P.L. 2 § 2(a)(1) (2005); *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995) ("Class

---

[8]  Two percent of the total $1,515,000 outstanding Bridge Notes principal is $30,300 multiplied by the 11 months or parts thereof that Converted Organics was delinquent in its registration requirements.

certification enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues."). Benefits of class actions also include "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." *In re Gen. Motors*, 55 F.3d at 783-84 (citation omitted).

Class actions are routinely held to be appropriate in the context of breach of contract claims. *Klay v. Humana*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("in light of Rule 23, claims arising from interpretations of a form contract appear to present a classic case for treatment as a class action, and breach of contract cases are routinely certified as such"); *Steinberg v. Nationwide Mutual Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (same).

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four "prerequisites" for a party seeking class certification:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). "These four requirements are referred to respectively, as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009). *See also*, *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2009) (same).

.

If all four requirements are met, "'a class of one of three types (each with additional requirements) may be certified.'" *Schering Plough*, 589 F.3d at 596 (quoting *Hydrogen Peroxide*, 552 F.3d at 309 n.6). Those three types of classes are set out in FED. R. CIV. P. 23(b)(1)-(3).

Here, plaintiff seeks certification under Rule 23(b)(3). Rule 23(b) provides that the a class action may be maintained if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b)(3). "The twin requirements of Rule 23(b)(3) are known as predominance and superiority." *Hydrogen Peroxide*, 552 F.3d at 310. The matters pertinent to these findings include:

> (A) the class members interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against any class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3)(A)-(D).

Plaintiff meets the requirements of Rule 23. Certification of the Class is therefore appropriate.

**B.     THE PREREQUISITES OF RULE 23(a) ARE SATISFIED**

The prerequisites of numerosity, commonality, typicality, and adequacy are satisfied.

### 1.     Numerosity

The class is so numerous that joinder of all members is impracticable. FED. R. CIV. P.

23(a)(1). "Numerosity requires a finding that the putative class is so numerous that joinder of all

members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d

154, 168, 182 (3d Cir. 2001). "No minimum number of plaintiffs is required to maintain a suit as

a class action, but generally if the named plaintiff demonstrates that the potential number of

plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d

220, 226-27 (3d Cir. 2001). *See also Hubbard v. Danberg*, Civ. Action No. 07-745-GMS, 2010

WL 883776, at *4 (D. Del. Mar. 10, 2010) (Sleet, J.) (Third Circuit "generally has approved

classes of forty or more").

Here, there were 59 investors pursuant to the FTA, including Plaintiff. (deLeeuw Dec.,

Ex. 1 (Complaint ¶ 13); (D.I. 1).) Thus, the potential number of plaintiffs is 59. Numerosity is

therefore satisfied.

### 2.     Commonality

There are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). The

Third Circuit has set a low threshold for satisfying the commonality requirement. *Newton*, 259

F.3d at 183 ("[w]e have set a threshold for satisfying" the commonality requirement). "It is well

established that only one question of law or fact is necessary to satisfy the commonality

requirement ." *Schering Plough*, 589 F.3d at 597 n.10. *See also*, *Johnston v. HBO Film Mgmt.,*

*Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) ("commonality requirement will be satisfied if the named

plaintiffs share at least one question of law or fact with the grievances of the prospective class");

9

*Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004) (same); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (same).

Here, numerous common questions of law and fact are present. These common questions include:

- Whether Defendant failed to timely file a registration statement covering the securities issued to Plaintiff and Class members pursuant to the FTA have that registration declared effective within the times specified therein;

- Whether Defendant breached the FTA by failing to timely file said registration statement and have it declared effective; and

- Whether Plaintiff and Class members have sustained damages, and, if so, the proper measure of those damages.

Commonality is therefore satisfied.

### 3. Typicality

Plaintiff's claims are typical of the claims of the class. FED. R. CIV. P. 23(a)(3). "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences. *Newton* 259 F.3d at 183-84. "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Stewart*, 275 F.3d at 227 (quoting *Baby Neal v. Casey*, 43 F.3d at 58 (citation omitted). As with commonality, the Third Circuit has set a low threshold for satisfying the typicality requirement. *Newton*, 259 F.3d at 183 ("[w]e have set a threshold for satisfying" the typicality requirement).

In this case, Plaintiff's claims are typical because they arise out of the same alleged conduct by Defendant. Defendant breached its registration obligations to Plaintiff and the other class members pursuant to the FTA. Thus, typicality is satisfied.

10

## 4.   Adequacy

The representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). "This requires a determination of (1) whether the representatives' interests conflict with those of the class and (2) whether the class attorney is capable of representing the class" *Newton*, 259 F.3d at 185. "The adequacy inquiry 'serves to uncover conflicts of interest between the named parties and the class they seek to represent.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1995)). It serves as a catch-all requirement that "tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem*, 521 U.S. at 625.

Here, both prongs of the adequacy test are met. Plaintiff shares the same incentives as absent class members to demonstrate Defendant's culpability. No antagonism exists between Plaintiff and the proposed Class. Indeed, like all members of the proposed Class, Plaintiff made an investment in Converted Organics pursuant to the FTA and suffered damages as a result of the Company's breaches of its obligations to them thereunder. Like other members of the Class, Plaintiff has an interest in demonstrating Defendant's breach. Plaintiff's interests are aligned with the interests of the absent class members, and there is no potential danger of a conflict.

Plaintiff has already demonstrated his commitment to pursuing this case on behalf of himself and the other putative class members.

Moreover, Plaintiff has retained qualified, experienced counsel with broad-based, multi-jurisdictional experience in complex class action litigation. The firm resumés of RABIN & PECKEL LLP and ROSENTHAL, MONHAIT & GODDESS, P.A. details the qualifications of both firms. *See* deLeeuw Dec., Exs. 8 & 9.

Given the absence of any conflict between Plaintiff and the Class and the qualifications of Plaintiff's counsel, Plaintiff satisfies the adequacy requirement.

## C.   THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED

The requirements of predominance and superiority are satisfied.

### 1.   Predominance

The questions of law or fact common to class members predominate over any questions affecting only individual members.  FED. R. CIV. P.  23(b)(3).  Under Third Circuit law, "[i]n order to predominate, the common issues must constitute a significant part of the individual cases."  *Chiang*, 385 F.3d at 273 (internal quotations omitted).  Put differently, predominance is satisfied "as long as a sufficient constellation of common issues binds class members together." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 162 (3d Cir. 2002) (internal quotations omitted). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1778 at 528 (2d ed. 1986).

In the Third Circuit, "most courts have refused to deny class certification simply because there will be some individualized questions raised during the proceedings."  *In re Linerboard* , 305 F.3d at 162.  Even where important individual facts and issues exist, the predominance requirement still may be satisfied based on evidence of a common scheme of course of conduct that concerns each class member's case.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("[w]hile individual questions may arise during the course of this litigation . . . the presence of individual questions does not *per se* rule out a

12

finding of predominance").

Here, the claims that are common for all class members are, in fact, the only claims in the case. There are *no* individual issues of liability here. The factual issues are identical for all members of the Class: each were issued Converted Organics securities in connection with their investment pursuant to the FTA; Converted Organics was contractually obligated to register those securities within a specified time; Converted Organics breached its registration obligations. Further, the measure of damages suffered by all Class members also predominates because damages for all Class members are subject to the same mathematical calculation. *See Duncan v. TheraTx, Inc.*, 775 A.2d 1019 (Del. 2001).

The predominance requirement is satisfied.

### 2.    Superiority

A class action is a superior to other available methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3). The superiority inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *Klingensmith v. BP Prods. N. Am., Inc.*, No. 07-cv-1065, 2008 WL 4360965, at *4 (W.D. Pa. Sept. 24, 2008). A class action is the superior, and in fact the only, judicial mechanism for prosecuting the claims here.

All of the factors enumerated in Rule 23(b)(3)(A)-(D) to be considered in making this determination support a finding of superiority.

### a.   The Class Members' Interest in Individually Controlling The Prosecution of Separate Actions

Given the relatively small size of any individual's recovery, it is unlikely that individual class members would bring their own claims.  A class action is the sole practical means for redress of the breaches of contract committed by Converted Organics.

### b.   The Extent and Nature of Any Litigation Concerning the Controversy Already Begun by Class Members

Plaintiff is not aware of any other cases brought by class members with respect to the claim asserted herein.

### c.   The Desirability or Undesirability of Concentrating the Litigation of The Claims in the Particular Forum

This Court is one of the only forums available for this litigation.  The FTA contains the following jurisdiction and venue provision: "The parties irrevocably consent to the jurisdiction and venue of the state and federal courts in Wilmington, DE in connection with any action related to this transaction."  (deLeeuw Dec., Ex. 4 (FTA, at 5 (Jurisdiction/Choice of Law)); (D.I. 6-2, Ex. 1).)  Further, the FTA also contains the following choice of law provision:  "All transaction documents shall be governed by and construed under the law of the state of Delaware . . . " *Id.*  Converted Organics did not, and could not, challenge plaintiff's choice of forum.  There could be no more desirable forum for concentrating the litigation than this Court.

### d.   The Likely Difficulties in Managing a Class Action

Finally, the class action is manageable.  Plaintiff knows of no difficulties in identifying the other 58 class members because that information will be readily obtainable from Converted Organics' records.

## D. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Rule 23(g) requires that the Court appoint counsel who will "fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g). In making its determination, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

Rabin & Peckel LLP and Rosenthal, Monhait & Goddess, P.A. have the qualifications, experience, and ability to represent the interests of the Class. *See* deLeeuw Dec., Exs. 8, 9. Accordingly, is respectfully requested that they be appointed class counsel and liaison counsel, respectively.

## CONCLUSION

The Court should certify a class under Federal Rule of Civil Procedure 23, appoint Plaintiff Gerald S. Leeseberg as the class representative, and appoint Rabin & Peckel LLP as class counsel and Rosenthal, Monhait & Goddess, P.A. as liaison counsel.

Dated: June 22, 2010

Respectfully submitted,

By:____*/s/ P. Bradford deLeeuw*_____
Joseph A. Rosenthal (No. 234)
Jeffrey S. Goddess (No. 630)
P. Bradford deLeeuw (No. 3569)
ROSENTHAL, MONHAIT & GODDESS, P.A.
919 Market Street, Suite 1401
P. O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
bdeleeuw@rmgglaw.com

15

RABIN & PECKEL LLP
I. Stephen Rabin (*pro hac vice*)
Joseph V. McBride (*pro hac vice*)
317 Madison Avenue
21st Floor
New York, NY 10017
(212) 880-3722

*Attorneys for Plaintiff and the Class*

16